PATTERSON, Justice:
Joseph Carter was indicted by the Circuit Court of Marion County for the murder of B. J. Monroe. He was convicted of manslaughter and sentenced to twenty years in the state penitentiary. On appeal he contends that he should have been granted a peremptory instruction and acquitted at the conclusion of the evidence. We affirm.
The appellant argues that under the rule of Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), he should have been acquitted since his version of the actual shooting of Monroe was the only testimony offered and was uncontradicted. In Weathersby we stated:
. It has been for some time the established rule in this state that where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. 165 Miss. at 209, 147 So. at 482.
At the onset of the trial it was stipulated that B. J. Monroe died as the result of a gunshot wound. There was no dispute that the appellant shot the decedent. The only question centers around the facts and circumstances of the shooting; that is to say, whether the appellant’s testimony is contradicted by other witnesses, the physical facts or facts of common knowledge in its material particulars.
*904 According to the appellant’s own testimony, he and a friend, Rudolph Foster, went to Maude Jefferson’s residence early on the evening of December 5, 1973. Maude’s place included public entertainment in the form of pool tables and a juke box.
The appellant met Monroe for the first time at Maude’s. He was persuaded by Monroe and others to purchase some liquor for all present and left with Monroe in Carter’s truck to purchase some gin. According to the appellant, he immediately felt a great kinship with Monroe, stating that they were “birds of a feather.”
Returning to Maude’s, Carter and Monroe shared a fifth of gin with Maude Jefferson, Walter Jefferson and Foster. When the gin was gone, Carter took Foster home and returned to Maude’s. Carter thereafter purchased another pint of liquor and gave Monroe $10 to get some “white lightning.” After Monroe returned with the latest purchase, Carter, by now feeling pretty high, according to him, lay down on the couch and dozed while Maude, Walter and Monroe remained in the room engaged in conversation.
Shortly, Maude went to bed and Walter went outside to get some wood for the fire. Carter, who had fallen asleep, was then awakened by someone going through his pockets. He opened his eyes and discovered that it was Monroe. He asked what he was doing and Monroe'backhanded him across the eyes and replied, “You old gray son-of-a-bitch, I won’t only take your money, I’ll take your life.”
Carter testified that the actions and threats of Monroe frightened him. He picked up his pistol which he had put under him when he lay down, and shot Monroe and when this did not stop him, he fired the second time. Carter stated he was afraid that Monroe was going to inflict bodily injury upon him although he did not know whether Monroe was armed.
The appellant’s testimony was contradicted by several witnesses. Walter Jefferson stated that when he left to get some firewood, the appellant was awake and that he and the decedent were talking. When Jefferson heard the shots, he returned to the room and saw Monroe fall out of his chair. He testified that the appellant had run out the front door and was driving off in his truck. He denied that any drinking had occurred during the course of the evening.
Maude Jefferson also testified that there had been no drinking during the evening. She was awakened by the shots and rushed into the room where Monroe was observed falling from his chair and Carter was running out the door. Both witnesses testified they saw no weapons in the vicinity of Monroe’s body and a subsequent investigation by the sheriff did not reveal any weapon on or near the body.
We are of the opinion the Weathersby rule is not applicable here and that there was sufficient evidence to sustain the verdict. The jury was not required to accept as reasonable Carter’s testimony that an unarmed man advanced upon him in the face of a drawn pistol. The reasonableness of the appellant’s version is also considerably weakened by the fact that he shot Monroe, who was unarmed, twice. Moreover, the evidence was such that the jury was warranted in concluding that at the time the fatal shots were fired the appellant was neither in real or apparent danger of death or grave bodily injury at the hands of Monroe.
Affirmed.
GILLESPIE, C. J., RODGERS, P. J., and INZER, SMITH, SUGG and BROOM, JJ., concur.